1 F.3d 1253
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 James M. CHRISTOPHER, Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 92-3382.
 United States Court of Appeals, Federal Circuit.
 June 23, 1993.
 
 Before RICH, LOURIE, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 DECISION
 
 1
 James M. Christopher (petitioner) seeks review of the October 30, 1991 decision of the administrative judge (AJ) in Merit Systems Protection Board (MSPB or Board) Docket No. DA07529110606. The AJ's decision became the final decision of the MSPB when the full Board denied petitioner's petition for review on March 18, 1992. In her decision, the AJ affirmed the action of the United States Department of Agriculture (agency) removing petitioner from his position for submitting a false time and attendance (T & A) report. We hold that the AJ's finding that petitioner committed the offense with which he was charged is supported by substantial evidence but that the agency abused its discretion in imposing the penalty of removal. Accordingly, we affirm in-part, reverse in-part, and remand the case to the Board for determination by the agency of what lesser penalty is appropriate.
 
 DISCUSSION
 
 2
 At the time of the events which led to his removal, petitioner was employed as a contract representative at the National Finance Center (NFC) near New Orleans, Louisiana. As a contract representative, petitioner responded to inquiries regarding government retirement and savings plans from plan participants and from government payroll offices.
 
 
 3
 On March 8, 1991, petitioner was summoned to serve as a petit juror. The jury summons required petitioner to serve "beginning [Monday] April 1, 1991 ... and there to continue from day to day until discharged by the Court." Upon receiving the summons, petitioner notified his supervisor, who thereupon advised petitioner that he was required to provide documentation of his jury duty. The supervisor also instructed petitioner that he was required to report for work on any day in which the court released him from jury service before twelve o'clock noon.[1]
 
 
 4
 Petitioner served jury duty from Monday, April 1, through Thursday, April 4, 1991. Although released from jury duty on April 4, petitioner returned to the courthouse on Friday, April 5. Upon being told a second time that his services were no longer required, petitioner left the courthouse at 10:30 a.m. Petitioner did not report for work on April 5, but he did make a cash withdrawal from the agency credit union located in the NFC at 1:00 p.m. that day.
 
 
 5
 Upon returning to work on Monday, April 8, petitioner signed and submitted a T & A report requesting forty hours of "court leave" for the preceding week. Before processing the T & A report, petitioner's supervisor noted the absence of the required documentation, and petitioner agreed to obtain it from the court.
 
 
 6
 On Tuesday, April 9, after discovering that petitioner had not yet submitted the required documentation, petitioner's supervisor inquired at the court and was told that petitioner had been released from jury duty on Thursday, April 4. When confronted by his supervisor with this information, petitioner responded that he "knew Friday was going to be a problem." Petitioner then submitted a leave slip for April 5 requesting eight hours of annual leave. This request was denied; the leave slip was approved after petitioner was marked "Absent Without Leave" for April 5.
 
 
 7
 The agency initiated an investigation into the circumstances surrounding the submission of the T & A report. During the investigation, petitioner offered several excuses and explanations to account for his time on Friday, April 5. However, petitioner's supervisor and an agency employee relations specialist charged with investigating the case found petitioner's responses to their inquiries evasive and uncooperative. The record contains several instances where petitioner responded to direct questions with shoulder shrugs or responses of "I'm sorry." Petitioner's brother attributed these responses to petitioner's passive personality and his general inability to cope with confrontation.
 
 
 8
 On May 1, 1991, the agency's employee relations specialist at the NFC issued petitioner a notice of proposed adverse action. The notice stated that the agency proposed to remove petitioner for "Certification and Submission of Time of Falsely Stated Request for Court Leave."
 
 
 9
 On June 7, 1991, the agency informed petitioner that the charge against him in the notice of proposed removal was sustained, with the modification that the falsely claimed court leave was being reduced from 8 hours to 5 1/4 hours, to take into account the fact that petitioner had been at the courthouse for part of the morning of April 5. The agency informed petitioner he was being removed from his position for "certifying and submitting a time report falsely stating a request for court leave."
 
 
 10
 We review the Board's decision under a narrow standard, and must affirm unless the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brewer v. United States Postal Serv., 647 F.2d 1093, 1096 (Ct.Cl.1981), cert. denied, 454 U.S. 1144 (1982) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).
 
 
 11
 We consider first the AJ's finding that petitioner had committed the offense with which he was charged. In order to prove the charge of falsification, the agency had to establish by a preponderance of evidence (i) that petitioner knowingly supplied incorrect information and (ii) that he did so with the intent to deceive or mislead the agency. Naekel v. Department of Transp., 782 F.2d 975, 977 (Fed.Cir.1986). The AJ concluded that the agency had proved both of these elements. On appeal, petitioner contends that, with respect to the second of these two elements, intent to deceive or mislead, the decision is not supported by substantial evidence.
 
 
 12
 We disagree. Petitioner was instructed by his supervisor that he was required to report for work on any day in which he was released from jury service before noon. Obviously, petitioner knew, when he filled out the T & A report, that he had not been at the courthouse for a full day on April 5, and petitioner told his supervisor that he "knew Friday was going to be problem." We can not say that the AJ's decision regarding the intent to deceive or mislead element of the offense is not supported by substantial evidence.
 
 
 13
 Petitioner also contends that his removal for falsifying the T & A report is unreasonable and should be set aside in favor of a lesser penalty. We agree. The AJ erred in affirming the agency's imposition of the penalty of removal.
 
 
 14
 This court will not disturb a penalty "unless it exceeds the range of permissible punishment or is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.' " Gonzales v. Defense Logistics Agency, 772 F.2d 887, 889 (Fed.Cir.1985) (quoting Villela v. Department of the Air Force, 727 F.2d 1574, 1576 (Fed.Cir.1984)). In petitioner's case, the penalty of removal was within the range of permissible punishment, but the agency abused its discretion in imposing it.
 
 
 15
 This court's review begins with the list of twelve factors in Douglas v. Veterans Admin., 5 M.S.P.R. 280 (1981). The key to determining the appropriateness of a penalty relative to an offense is the identification and "responsible balancing" of all the relevant factors in the individual case. Id. at 306. In this case, there was not, on the part of the agency, a proper balancing.
 
 
 16
 While petitioner's misrepresentation on his T & A report of the number of hours he was at the courthouse on April 5 was not an insignificant offense, the actual number of hours which petitioner falsely sought to appropriate was relatively few (approximately 5 1/4). Also, petitioner had a satisfactory record during his prior two years at the agency and had not been the subject of disciplinary action during that time. Moreover, petitioner's duties at the NFC were largely clerical in nature, and petitioner did not handle funds and had no supervisory responsibilities. In addition, petitioner's misconduct occurred under unique circumstances which were unrelated to the specific duties and responsibilities of his position at the NFC. Accordingly, we find strained the rationale of the agency's deciding official that one of the factors he took into account in deciding to impose the penalty of removal was the fact that the NFC provides financial services for several federal agencies, and that the NFC's clients are concerned with trustworthiness.
 
 
 17
 Finally, the agency's deciding official placed significant weight on what he perceived to be after-the-fact evasiveness, or continuing "dishonest behavior" on the part of petitioner after the discrepancy in the T & A report came to light. However, upon being initially confronted by his supervisor on Monday, April 8, petitioner admitted that accounting for his time on Friday might be "a problem." Thereafter, on Tuesday, April 9, after being confronted with information that the court could not document his jury duty for Friday, petitioner submitted a leave slip requesting eight hours of annual leave, and subsequently, during questioning sessions, petitioner repeatedly responded "I'm sorry." Thus, the deciding official's characterization of petitioner's conduct is at odds with the facts developed before the AJ.
 
 
 18
 The result in this case is compelled by our holding in Miguel v. Department of the Army, 727 F.2d 1081 (Fed.Cir.1984). There, we held that the Department of the Army abused its discretion in removing from her position a commissary cashier who stole two bars of soap valued at $2.10. In this case, we would be acting contrary to the precedent of Miguel if we upheld the decision of the AJ affirming petitioner's removal for falsely stating on his T & A report his whereabouts for 5 1/4 hours on April 5, 1991.
 
 
 19
 Each party will bear its own costs.
 
 
 
 [1]
 This verbal instruction was at odds with the agency's written policy, which requires employees to return to work if released from jury duty prior to 12:45 p.m. The point is not material to the resolution of the appeal, however